UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEFFREY BURKHART,                 )

                       )

            Plaintiff,           )

                       )

            v.                 )    No.

                       )

HARTFORD LIFE AND ACCIDENT    )

INSURANCE COMPANY,        )

                       )

           Defendant.       )

## COMPLAINT

Now comes the Plaintiff, JEFFREY BURKHART ("Plaintiff"), by his attorneys, MARIE E. CASCIARI and DEBOFSKY LAW, LTD., and complaining against the Defendant, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY ("Hartford" or "Defendant"), states as follows:

### NATURE OF ACTION

1.      This case seeks the payment of long-term disability ("LTD") benefits due under a group policy of insurance, policy number GLT-681434 ("Policy") (a true and correct copy of which is attached hereto and by that reference incorporated herein as "Exhibit A"). The Policy is sponsored by Shaw Industries Group, Inc. ("Shaw"), and underwritten and administered by Hartford. This action is brought as a claim for benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1132(a)(1)(B)). Plaintiff also seeks attorneys' fees and costs under ERISA § 502(g) (29 U.S.C. § 1132(g)).

## JURISDICTION

2.     Jurisdiction of this Court is based upon ERISA §§ 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)).  Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of employee welfare benefit plans.

3.     This action may also be brought before the district court pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

4.     ERISA § 503 (29 U.S.C. § 1133) provides for internal appeals of adverse benefit determinations.  Those avenues of appeal have been exhausted, making this matter ripe for judicial review.

## VENUE

5.     Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) because Plaintiff resides in this District.

6.     Venue is also proper in the Northern District of Illinois, Eastern Division, according to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within this District.

## PARTIES

7.     Plaintiff is a resident of Homer Glen, Illinois, in Will County, and the events or omissions relevant to Plaintiff's claim for LTD benefits took place within the Northern District of Illinois, Eastern Division.

8.     The Policy constituted an "employee welfare benefit plan" as defined by ERISA § 3(1) (29 U.S.C. § 1002(1)); and incident to his employment with Shaw, Plaintiff received coverage under the Policy as a "participant" as defined by ERISA § 3(7) (29 U.S.C. § 1002(7)).

2

9.      Hartford is the underwriter and administrator of the Policy, and regularly engages in business within the Northern District of Illinois, Eastern Division.

## RELEVANT POLICY PROVISIONS

10.      Plaintiff is eligible to receive LTD benefits starting on August 2, 2022, following his satisfaction of the Policy's 90-day elimination period, until age 67, based on his Social Security Normal Retirement Age and age of 56 as of his disability onset date, which would be reached in December 2032.  Ex. A, at 17-18.  Plaintiff is entitled to LTD benefits in the maximum benefit amount of $7,500 per month, based on his monthly pre-disability earnings of $23,171.58 and the benefit coverage percentage of 60%.  Ex. A, at 17.

11.      The other provisions of the Policy relevant to Plaintiff's claim for LTD benefits provide as follows:

### BENEFITS

**Disability Benefit:** *What are my Disability Benefits under The Policy?*

We will pay You a Monthly Benefit if You:
1)   become Disabled while insured under The Policy;
2)   are Disabled throughout the Elimination Period;
3)   remain Disabled beyond the Elimination Period; and
4)   submit Proof of Loss to Us.
Benefits accrue as of the first day after the Elimination Period and are paid monthly. However, benefits will not exceed the Maximum Duration of Benefits.

Ex. A, at 20-21.

### DEFINIITIONS

**Any Occupation** means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:
1)   the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or
2)   the Maximum Monthly Benefit...

**Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:

    3)   Your Occupation during the Elimination Period;

    4)   Your Occupation, for the 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and

    5)   after that, Any Occupation...

If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are equal to or greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings, whichever occurs first. For the purposes of extending Your Elimination Period, Your Current Monthly Earnings will not include the pay You could have received for another job or a modified job if such job was offered to You by Your Employer, or another employer, and You refused the offer.

Your Disability must result from:

    1)   accidental bodily injury;

    2)   sickness;

    3)   Mental Illness;

    4)   Substance Abuse; or

    5)   pregnancy.

Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled.

Ex. A, at 28-29.

## STATEMENT OF FACTS

### Plaintiff's Medical History

12.     Plaintiff has a long and complicated medical history, including severe orthopedic and musculoskeletal impairments such as multilevel degenerative disc disease of the spine with compression fractures and disc bulges, and other tears and impairments of the shoulders, elbows, hips, and knees.

13.     Over the past 15 years, Plaintiff has undergone over a dozen orthopedic operations at multiple levels in his spine, along with his bilateral shoulders, elbows, hips, and knees.

14.     In 2010 and 2011, Plaintiff even received LTD benefits from Hartford under a different plan when he was employed as a sales representative by Sysco Corporation ("Sysco").

15.     Since then, in the past couple of years, Plaintiff has required additional surgical intervention, including a right hip arthroscopy revision in August 2023, an L1-L3 laminectomy and facetectomy in March 2024, an L3-L4 laminectomy in October 2024, and a T11-L3 spinal fusion with L1 corpectomy in May 2025, for which he was just recently discharged from the hospital in mid-June 2025.

16.     In addition, Plaintiff has tried numerous conservative pain relief measures without sustained improvement, including physical therapy, steroid injections, and lidocaine patches. Plaintiff also regularly takes narcotic pain medication.

17.     On top of Plaintiff's chronic orthopedic and musculoskeletal impairments, he suffers from co-morbid obstructive sleep apnea, hypersomnolence, hypertension, hyperlipidemia, gout, and coronary artery disease, amongst other things.

**Plaintiff's LTD Benefits Claim**

18.     On November 16, 2015, Shaw hired Plaintiff as a full-time Territory Sales Manager.

19.     Plaintiff's occupation as a Territory Sales Manager at Shaw was a skilled position, performed at the medium exertional level.

20.     Approximately seven years into his employment with Shaw, Plaintiff was forced to cease working after April 29, 2022, due his chronic medical condition and need for additional surgery.

21.     Plaintiff has not returned to work in any capacity since he ceased working effective May 2, 2022.

5

22. After ceasing his employment, Plaintiff received salary continuation from Shaw through July 31, 2022.

23. Plaintiff thereafter also submitted a claim for LTD benefits under the Policy.

24. On September 13, 2022, Hartford denied Plaintiff's claim for LTD benefits, alleging that it did not receive sufficient medical documentation from Plaintiff's treating providers "to give us clear detail on whether or not you meet the definition of disability."

25. On October 18, 2022, Hartford reaffirmed its decision to deny Plaintiff's claim.

26. As a result, on May 9, 2023, Plaintiff submitted an appeal challenging Hartford's denial of benefits through the undersigned counsel pursuant to ERISA § 503 (29 U.S.C. § 1133) and 29 C.F.R. § 2560.503-1.

27. Less than a month later, on June 5, 2023, Hartford agreed to overturn its prior decision to deny Plaintiff's claim.

28. The following month, on July 5, 2023, Hartford approved the payment of LTD benefits starting August 2, 2022, following Plaintiff's satisfaction of the policy's 90-day elimination period.

29. A year later, on August 24, 2023, Hartford issued a letter extending Plaintiff's LTD benefits through August 2, 2024.

30. Nonetheless, on September 16, 2024, Defendant notified Plaintiff that it no longer deemed him to be disabled and had terminated his LTD benefits as of August 2, 2024.

31. Defendant's decision to terminate benefits was based exclusively on the results of biased and deficient medical reviews performed by individuals who never examined Plaintiff, along with an employability analysis prepared by a vocational case manager that claimed to identify other sedentary occupations Plaintiff was qualified and able to perform.

32.     On February 20, 2025, Plaintiff once again appealed Defendant's decision to deny him ongoing LTD benefits through the undersigned counsel and submitted additional medical evidence even further supporting his ongoing disability, including information about his recent and upcoming spinal surgeries.

33.     On February 24 and April 2, 2025, two subsequent appeal submissions were made to Hartford with supplemental medical documentation.

34.     Nonetheless, on April 22, 2025, Hartford produced the medical and vocational reviews it had performed during its latest appeal review, which included another medical review completed by a doctor who also never examined Plaintiff and an addendum to its earlier employability analysis report.

35.     Hartford's medical review acknowledged that Plaintiff's "[p]rognosis is poor" and that he "will most likely have long term limits on activity," including multiple intermittent "post-op period[s]" lasting up to two months each following his various surgeries and epidural steroid injections since August 2024, during which time he could not work at all.  Hartford's medical review nevertheless still concluded that Plaintiff could perform full-time sedentary work.

36.     On May 16, 2025, Plaintiff's counsel submitted a formal rebuttal responding to the evidence Hartford collected during its appeal review and produced even further medical support for his ongoing disability, including letters from his treating doctors confirming that "due to the severity of [hi]s pain and functional impairments he has been unable to work."

37.     On May 21, 2025, one final appeal submission was made to Hartford with the operative records from Plaintiff's most recent spinal surgery – a T11-L3 spinal fusion with L1 corpectomy – from the week prior.

38.     The next week, on May 28, 2025, Hartford notified Plaintiff that it was upholding the decision to terminate benefits.  Hartford's decision was based exclusively on the erroneous medical and vocational reviews performed during its appeal review despite Plaintiff's comprehensive appeal rebuttal refuting that evidence, along with the fact that Plaintiff was still in the hospital from his most recent surgery just two weeks earlier.

39.     Hartford's entire claim and appeal process was biased and self-serving, and placed financial considerations ahead of an objective and fair claim evaluation.  Hartford's appeal review was cursory, overlooked critical evidence, and was structured to cherry-pick only the evidence that favored the termination of benefits while ignoring the overwhelming contrary evidence.  Hartford thus did not meet its fiduciary obligations under ERISA to ensure an accurate claim decision and apply "higher-than-marketplace quality standards," as required by the United States Supreme Court in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008).  In doing so, Hartford failed to provide Plaintiff with the "full and fair review" mandated by ERISA § 503 (29 U.S.C. § 1133) and 29 C.F.R. § 2560.503-1.

40.     In sum, the evidence submitted to Defendant establishes that Plaintiff has been continuously unable to return to any sustainable full-time work since May 2, 2022, and has thus met and continues to meet the Policy's definition of "Disability or Disabled" since then due to his severe orthopedic and musculoskeletal impairments and need for ongoing surgical intervention. Plaintiff is therefore entitled to receive all LTD benefits due from August 2, 2024 to the present with interest.  Such LTD benefits should continue under the Policy for as long as Plaintiff continues to meet the Policy's terms and conditions for the receipt of benefits.

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays for the following relief:

A.      That the Court enter judgment in Plaintiff's favor and against Defendant, and that the Court order Defendant to pay all past due LTD benefits to Plaintiff in an amount equal to the contractual amount of benefits to which he is entitled pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B));

B.      That the Court order Defendant to pay Plaintiff prejudgment interest on all LTD benefits that have accrued prior to the date of judgment at an appropriate rate pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) or ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3));

C.      That the Court order Defendant to maintain Plaintiff's LTD benefit payments for as long as he continues to meet the Policy's terms and conditions;

D.      That the Court award Plaintiff attorneys' fees and costs pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)); and

E.      That the Court award Plaintiff any and all other penalties, damages, and equitable relief to which he may be entitled.

Dated: June 18, 2025

Respectfully submitted,

/s/ Marie E. Casciari

_____

Marie E. Casciari
Attorney for Plaintiff
Jeffrey Burkhart

Marie E. Casciari
DeBofsky Law, Ltd.
2 North Riverside Plaza, Suite 1420
Chicago, Illinois 60606
Telephone: (312) 561-4040
Facsimile: (312) 600-4426
Email: mcasciari@debofsky.com